I'm John Ward. I'm here for Mr. Murphy. I think that whatever else is true about this case, three things are pretty clear. The first is that the holdout juror that was excused had doubts about the credibility of the immunized witness. The second thing is that he articulated that difficulty sufficiently for the other jurors to be aware of it, and he did so over a period of time. The jurors came back on the second day of deliberations and said that they were at an impasse, and that's when the situation began to devolve. And I think the third thing is, of course, the problem in this case is that it has to be winnowed through AEDPA. And so because of that, and because this is not the first time I've dealt with this issue, I've been at pains to try to frame it in a way that I think makes sense. And I believe that the place to go with that is Lohenfeld v. Phelps, where the Supreme Court said that the jurors were entitled to an uncoerced jury verdict. Now, and it's also clear, I think, from following Supreme Court jurisprudence, that that principle without violating AEDPA, one, this Court at this level can flesh out that principle in various different situations. Lohenfeld itself said that we hold on these facts, that the combination of, in that case, it was a sort of an Allen charge, and the supplemental instructions, blah, blah, blah, were not coercive in such a way as to violate the defendant's constitutional rights. So I think what we're talking about here, and I think this is a source of a lot of confusion, is that we're really not talking about the motivation either of the other jurors or of the trial judge. What we're talking about is the effect of the entire thing on the jury. And we're also — I think we also cannot avoid the fact that it's so obvious as to not need argument that the conclusion of an individual juror, no matter how badly expressed, no matter how inarticulate, no matter how off the wall, has a certain sacredness. And that there are many, many cases where jurors are emotionally unable to deliberate, where there are physical or mental problems, where there's all kinds of things, deaths in the family, all sorts of things. But here the issue isn't whether or not this fellow was able to deliberate. The issue is whether or not he did. And so, as I've thought about this case, I'm a little bit less obsessed about whether or not this is a legal issue that was decided either in a reasonable or unreasonable fashion, or whether or not it was a factual determination that, despite all the deference in the world, needs to be overturned here. And the reason I say that is because — Kennedy. Well, are you saying this is not a — that under the facts it becomes a legal issue? Gershengorn No. I'm saying, Judge, that either way we look at it, whether we look at it as a mixed question of law and fact, which is decided on the basis of the Court's independent judgment asterisk under AEDPA, or whether we look at it as a factual issue that's entitled to deference, we still win. And the reason I say that is because no other solution is really possible if you're going to honor the principle of an uncoerced jury verdict. And I suppose the case that looms back at me is the Perez case, Perez v. Marshall, a habeas case decided in this Court, where a holdout juror was excused and where the Court — this Court upheld that. And I distinguish Perez by virtue of the fact that in that case there was an additional overlay of emotional upset. And the Court was at pains to attempt to keep the juror on, discovered — I think it was a she, the juror, that is — was really unable to go forward. And on that basis, this Court held that as a factual matter, based on due deference and so forth, that that could be permitted. This case, as I say, is different. And I think that's really the only point that I — that I really want to bring to the Court's attention is that the judge said a lot in this case about why this juror should be excused. But saying a lot doesn't mean that you're saying something that's really reasonable. One of the things that sort of filtered through this case was the possibility that this juror could have been biased. But I point out that the prosecution and the — the prosecution said to the judge, look, you know, there's really no impermissible bias in this case. And at one point the judge agreed, even though later he decided that bias was a sort of a factor, but not really a factor in this case. The fact is that once you start going into body language and whether or not — I mean, I asked myself, how could a juror who's 11-to-1 in an isolated position like that, how could they not be defensive? I mean, I suppose there are some Buddha-like types that could just sort of ride through it all and give reasoned arguments and so forth. But these are jurors. They're not lawyers. And I think as he was faced with examination by the judge and as the thing sort of unraveled, he became defensive in the juror room. And — but I don't think it can be the law that we require jury rooms to be places where jurors, A, don't bring their own experiences, and, B, don't bring their own material of all kinds — psychological, life experience, all that sort of thing. And that the lively give-and-take of the jury room and so forth is considered part of what we put up with to achieve what we think is a very fair system, and I think rightly so. Here's when I want to do that. Go ahead. I want to ask this question. As I understand it, this juror early on told the other jurors, I don't believe this one witness, the main witness. Yes. And that was his position all the way through. And so as far as not deliberating with others, he'd had his mind made up, and he wasn't going to change that. And I take it your position is there was nothing more to deliberate about. Well, I think so. They deliberated for quite a period of time, Your Honor. And also, I mean, it's also clear if you read the record, of course you've read the record, but that what he was hung up on was what constitutes reasonable doubt. And, I mean, I think it's often the case that after hearing, this was quite a long trial, he had a — let's concede that he had a very firm idea in his head, but he talked about it. And what more can you really ask of a juror? I mean, can you ask a juror to say why you don't believe somebody? Well, why don't — I mean, under California law, there's all kinds of reasons, the way that the witness holds their body, the way that — all kinds of things, demeanor, all that stuff. So I think that without impugning the motives of anybody, to let this one go by is to say that unless a juror meets a certain standard of, let's call it good conduct, that it's okay to excuse that juror. And I think that's a really — just a very bad place to come out in this matter. I have a better — I don't want to kill you a minute, but what I wanted you to tell us, and you can do it on rebuttal if you want. Sure. What would be our holding if we agreed with you and we wanted to decide the case in your way? What would we do? Would we say you can't ever dismiss a juror? No, no, no, no. And that's — I don't think you have to go anywhere near that to get here. I think that whereas here it is clear that the juror did deliberate, did articulate, did give a reason, and that the reason was totally related to the juror's inability to put this beyond a reasonable doubt category, that under those circumstances it was an unreasonable — either an unreasonable application of settled Supreme Court law, Lowenfield, or an unreasonable factual finding on the part of the district court. Therefore, a new trial is required. Now you're basing your argument that the Supreme Court has spoken directly on this in Lowenfield? Well, you know, I mean, I think one of the — Are you going to answer that? I do. We've got to say this was contrary to the Supreme Court law or was an unreasonable determination under Supreme Court law. Otherwise, we're hanging out in the wind. Absolutely. And I think — actually, I think it may have been Judge Thomas that wrote Sanders v. Lamar. Yes. In which it says — so I think we could rely on Ninth Circuit precedent to say — Well, that's a problem. Okay. But in addition, I think, yes, you can safely and securely rely on Lowenfield, that this is simply a different application of a basic principle, no coercion. That every defendant is entitled to an uncoerced jury verdict and that it's a violation of due process not to. I think that — thank you. Thank you. May it please the Court. Barton Bowers, Deputy Attorney General for Appellee Lamarck. At the risk of stating the obvious, there is no constitutional right to retain a juror who refuses to deliberate. Strictly speaking, the issue here is not one of jury coercion or coercion of a verdict. It is whether removal of a juror who refused to deliberate violated Murphy's constitutional rights. But Murphy phrases it in terms of coercion by asserting a violation of his right to an uncoerced verdict. And I suggest that the reason he does so is to try to avoid the deference that is accorded to findings of fact made by trial courts when determining juror fitness. So how do you deal with Sanders? Sanders was a habeas case and we found that there was a sufficient constitutional principle articulated by the United States Supreme Court to establish that you couldn't throw out a pulled out juror just because the juror disagreed, right? Yes. However, in his opening brief, he agreed that Sanders was factually inapplicable, that Sanders involved a different claim. I'm talking about — I agree with you on that because you have to look at Perez and Sanders together on our case law. There are sort of bookends on this issue, at least as far as habeas is concerned. But as far as the principle is established on holdout jurors and removal, you'd have to agree that Sanders is applicable in the Ninth Circuit. My view is that Sanders stands alone in that it holds that removal of a juror under its circumstances in effect coerced the verdict. All of the other cases dealing with coercion were dynamite charge cases where you had a jury out of deadlock. Sanders was a little different in that respect. Well, he did say in Sanders that removing a holdout juror is really the ultimate form of coercion because you're — if you're just removing the impediment to a conviction. And the question then, of course, is what — does the court have good reason? And in Perez, we said — we defer to the factual finding that the juror was emotional. So if you look at those two cases as bookends, this falls somewhere in between. Was the juror failing to deliberate, or had he just made up his mind and wasn't going to change it? The trial court found as a factual matter that this juror refused to deliberate from a very early point in deliberations. That's hard to support on the record because he kept saying, look, I just made up my mind, I was listening, but I've — the suggestions seem to be that, well, he wasn't changing his mind, and therefore he wasn't deliberating. But what the trial court did was take into consideration the statements of all the jurors to get a sense of what actually happened. And at one point, the trial court determined Juror 11's demeanor because Juror 11 said, well, I deliberated. The trial court said, as a matter of credibility, I don't believe that. And the trial court made that finding based on the statements of other jurors who gave statements as to what Juror 11 said in deliberations. My mind's made up. Nothing you say is going to change my mind. And not just the statements, but his body language, his posture, and his unresponsive answers to the questions of the other jurors. These were findings of fact made by the trial court. I understand that. But it is — I mean, I think there's some force to the argument that after a certain point in deliberations, if someone has made up their mind, that that's probably going to be it. And if the jurors — you've got 11 other jurors who are assaulting, you probably are going to look defensive, particularly if it's a lay jury. The question is, is there something wrong with that? And is the juror doing it for an improper reason? Because the Supreme Court has been absolutely clear that once you know that that's what the count is, what the — if it's 11 to 1, you've got one holdout juror, you have to proceed with a great deal of care in how you approach either an Allen instruction or take any other action. So, I mean, that's where I see this case. Are the factual findings enough to fall to the Perez side? Or was, in fact, the district court saying there's an — he's not going to change his mind, so let's replace him? I agree with that difficulty. The problem is the Supreme Court hasn't spoken to this. The Supreme Court hasn't indicated how much deliberation is enough. And here, again, based on the factual findings, you have a juror that, in a sense, wasn't functioning as a juror. You can conclude from the court's factual findings that this was a defective juror by not entering deliberations with an open mind, and specifically having no open mind regarding the credibility of witnesses. And he made a statement indicating that he wouldn't trust people like this one witness, Melissa Foote. Well, another juror reminded him that, hey, we all agreed before trial to set aside our deliberations, and all of us did, which implies some disingenuousness on the part of juror 11. And so the real problem here is the Supreme Court has not set out clearly established law. They haven't said how much deliberation is enough. But as a factual matter, this court found that this juror failed to act as a functioning juror and was forced by that inability to act as a functioning juror to remove him. And in my mind, the only way this could have been clearer is if it were the situation as in United States v. Baker, which we cited at page 23 in our brief, where the Second Circuit evaluated a case where the juror admitted that she did not enter deliberations with an open mind. That person was not functioning as a juror. The court found no problem with good cause to remove him. That's the only way. And I suppose if we're going to look at the Second Circuit, we have to look to Symington and our circuit, which is a little more against your position. I mean, if Symington applies, and I concede it's only persuasive authority, it doesn't apply in AEDPA cases. But do you think that you would survive the Symington standard? I think I would, because Symington stood for the rule that you can't exclude or remove a juror based on viewpoint. And that's not what happened here, because the trial court took great pains to point out that it was not removing this juror based on his views of the case, which it wasn't clear. The trial court could infer that this was a juror who would have voted not guilty, but that wasn't clear. It wasn't clear that this was an 11-to-1 holdout. The trial court found that that juror --. And you say I don't believe a prosecution witness, and therefore I'm not changing my mind. It's pretty clear. It can be inferred. It can be inferred. But the trial court took pains to emphasize that this juror was not being excluded on the basis of his viewpoint. He was being excluded for his inability and refusal to deliberate. Look, what the Supreme Court has said is that jurors have a duty to deliberate. They have a duty to share views, and there has to be a give-and-take among jurors. And that didn't happen in this case. And based on the factual findings of the trial court, it didn't happen because of the attitude of juror number 11. Well, it seems to me that if your position is right, that in any case where the jury is divided 11-to-1, as it was in this case, that it could be said that a jury who was for not guilty verdict because on credibility could be removed because he or she had made up his mind and refuses to discuss it further. Isn't that what we have here? We don't have that. Well, you can't say that in every case because you're not going to have the record you have in this case. You're not going to have the factual findings you have in this case where it's clear that very early on this juror shut down and refused to deliberate.  You know, they start to deliberate. A jury, basically, they make their minds up. Sometimes they even make their minds up on opening statements and don't change it. That's mostly in the civil area. We don't know how juries operate. But if a jury, it seems to me, and this is a bothersome case, if a jury has a reason for a determination and doesn't want to change it, you can always say he or she is not willing to deliberate. That's kind of an impasse, and that's an enigma to me. And it's a tough case. Well, one is you have to have the factual record to support it. Otherwise, this Court would make a finding of unreasonable determination of the facts. That's not possible given this record. And that wasn't even the claim here in the opening brief. Two is you simply, I'm sorry, Your Honor, it's not bothersome because under AEDPA, we can't assume that trial courts are being disingenuous. And that's really the implicit position here is that in spite of all these findings of fact, this trial court was being disingenuous or worse when it made these findings. And under AEDPA, we can't do that. I'm not sure that's quite the issue. And I think the issue is if you say I've made up my mind constitutes a failure to deliberate justifying removal of a holdout juror, then basically you're going to have justification for throwing all holdout jurors out for any reason. And it's hard to conceive of a case when you couldn't sustain throwing off a holdout juror. And we know in the real world if you get 11 to 1 and you remove a juror and a new juror comes in and says, well, we've taken a vote, we're all unanimous, what do you think? Pretty tough for that juror, the new juror, to come in and say, well, no, I think we better start all over again and I'm not convinced. Very difficult. There's two points I'd like to make while I still have time. One is it wasn't just a finding of bias or refusal to deliberate. It was actually not following the court's instructions. That's one of the factual findings made here. The second is that as far as coercion goes and if the court's worried about coercion, I think, again, Perez addressed coercion at the end of its opinion. And it found that, look, on a couple of the counts the jurors were unable to agree. And here in this case you actually have the jury finding a special allegation not true and finding a special circumstance not true. So it's not as though the court in this case coerced a verdict to march on its way to a unanimous guilty verdict. That's not what they did. They found a couple of the allegations not true. And that's in the record at 452 through 458 of the clerk's transcript. So there was no coercion in this case. And unless the court has any further questions, we'd ask that the district court's judgment be affirmed. Roberts. Thank you, counsel. Thank you. Okay. Case just heard will be submitted. We'll take a 10-minute recess before proceeding with the last case on the oral argument calendar.
judges: Farris, Thomas, Bright